(No. 42272.—)
Maxine M. Plank, Exrx., Appellee, *vs.* Thomas Earl Holman, Appellant.—(Myrtle R. Walgreen *et al.,* Cross Appellants.)

*Opinion filed Sept. 29, 1970.—Rehearing denied Dec. 3, 1970.*

Tyler and Peskind, of Aurora, (Floyd J. Tyler and George R. Maytas, of counsel,) for cross appellants Myrtle R. Walgreen and Elsie Rayfield.

Gates W. Clancy, of Geneva, (James S. Mills, of counsel,) for appellant Thomas Earl Holman.

O'Brien, Burnell, Puckett & Barnett, of Aurora, (Wilson D. Burnell, Donald L. Puckett, Richard J.

LARSON, and PETER K. WILSON, JR., of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Maxine Plank, executrix of the estate of Laurence Plank, sued Thomas Holman, Myrtle Walgreen and Elsie Rayfield, administratrix of the estate of Ralph Rayfield, for the wrongful death of her husband. The jury returned a verdict for the plaintiff on which judgment was entered. The Appellate Court for the Second District affirmed (108 Ill. App. 2d 216) and we granted leave to appeal.

Basically, defendants contend: (1) that the trial court erred in permitting evidence of decedent Plank's careful habits, as there were competent eyewitnesses to the accident; (2) that the trial court erred in admitting the testimony of the reconstruction expert and in failing to strike his testimony on the ground that there were eyewitnesses to the accident, thus barring reconstruction testimony, and on further grounds that there was inadequate foundation for such testimony; and (3) that the trial court erred in excluding the occurrence testimony of the defendants' witnesses.

The accident in question occurred while Laurence Plank was driving his 1963 Buick in a westerly direction along Route U.S. 30 about one mile west of the intersection of U.S. 30 and Illinois Route 47 in Kane County. At the site of the accident, there was a yellow no-passing stripe for the westbound traffic, and the highway from east to west was on a slight upward grade, toward the crest of a hill. The plaintiff, Maxine Plank, was driving another car, approximately eight to nine car-lengths behind her husband's car. There were no cars between them. The defendants' cars were operated in an easterly direction, one a Mustang driven by Thomas Holman; and the other a Lincoln driven by Ralph Rayfield, the chauffeur of Myrtle Walgreen. Mrs.

Holman was a passenger in her husband's car and defendants Myrtle Walgreen and Elsie Rayfield were riding in the Lincoln.

Defendants Holman, Walgreen and Rayfield, and also Mrs. Holman, were offered as witnesses, but plaintiff objected and they were not permitted to testify because of the so-called Dead Man's Act (Ill. Rev. Stat. 1967, ch. 51, par. 2). The proferred testimony of the defendants indicated that the Mustang at no time passed the Lincoln, and that the Buick was passing in the eastbound lane at the time of the accident.

The deputy sheriff who investigated the accident was called by the plaintiff and testified that when he arrived at the scene the decedent's Buick was facing in a westerly direction, completely in the westbound lane with its right rear wheel "perhaps" on the shoulder of the westbound lane; that the Lincoln was swung around facing in a northwesterly direction about ten to fifteen feet east of the Buick, the front half being in the westbound lane of traffic and the rear half being in the eastbound lane of traffic; and that the Mustang was about twenty feet east of the Lincoln partly on the shoulder on the eastbound side of the highway.

The plaintiff next called George Willgeroth, who arrived at the scene shortly after the accident. He did not observe any skid marks at that particular time, but his family remarked about them. The next day, he returned to the scene and observed the skid marks; the heaviest and most obvious ones were in the eastbound lanes. He testified that they seemed to swerve into the west lane; and that some lesser skid marks were in the westbound lane. A witness was called by the plaintiff, who testified to the careful driving habits of the decedent, Laurence M. Plank.

William Billings, an expert in reconstructing accidents, was then called by the plaintiff. He testified as to his training, background and experience in the field; that he had reconstructed the accident in question and in doing so, he

employed photographs of the cars involved, photographs of the highway at the scene of the accident, and photographs taken by him at the scene at a subsequent date. He testified as to his personal observation of the Buick and to the measurements and other observations made by him at the scene of the accident at a subsequent date. He testified in detail with reference to the various steps involved in his reconstruction of the accident. It was his opinion that the eastbound Mustang was overtaking and passing the eastbound Lincoln; that the driver of the Mustang observed the closeness of the westbound Buick and turned to the right and braked to get back into the eastbound lane in front of the Lincoln; that the Lincoln, in order to avoid a rear-end collision, turned to the left and applied his brakes; that the front of the Lincoln collided with the rear of the Mustang; and that the Lincoln then proceeded crossways into the westbound lane, where it was struck at its right front fender by the front of the Buick.

Maxine Plank testified that her husband had been industrious, his habits of sobriety and thrift were good, his health had been good, and he contributed money, goods and services to her.

The defendants called Catherine Arnold, who was traveling west along the same highway, as their first witness. She testified that she first heard a crash and then saw the Lincoln, in the air, going from the eastbound into the westbound lane. She was not able to describe anything that happened prior to the sound of the crash. Next, they called Rita Houston. She testified that she was riding in a car proceeding westerly along the same route; that she looked up and saw the two cars that had collided, and that when she saw them they were up in the air "like a peak."

Defendants also called Maxine Plank under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, par. 60). She testified that at the time of the accident she was driving an automobile about eight or nine car lengths behind

her husband's Buick; that there were no cars between them; that the Buick's rear end was entirely in her view as she approached the place where the accident occurred; but that she "did not see the Lincoln vehicle anytime prior to the actual impact with the Buick." She also stated that she did not see either the Lincoln or the Buick contact the Mustang; and that, "Actually I only saw two cars come together at the scene of the accident—the Buick and the Lincoln."

Defendants contend that the court erred in admitting the careful habits testimony and the reconstruction testimony because the plaintiff was an available eyewitness. Plaintiff argues that she was not an eyewitness because she did not see the path of all three automobiles before the accident. The principal factual question for determination in the case was: Which vehicle went over the center line of the highway at the time of the collision? According to plaintiff's testimony she did not see the Lincoln or Mustang before the accident. However, she did testify that as she approached the place where the accident occurred, the rear end of her husband's car was entirely in her view. Plaintiff listed herself as a witness in her sworn answers to interrogatories before trial. Whether plaintiff may be considered an eyewitness to the accident is determined by the circumstances she observed. If the plaintiff could relate circumstances from which the decedent's behavior and operation of his automobile might be reasonably inferred, she may be termed an "eyewitness." (See: *Elliot* v. *Elgin, Joliet & Eastern Railway Co.*, 325 Ill. App. 161.) It is not necessary that an eyewitness see everything that occurred at the accident scene. Although the plaintiff did not see all three automobiles involved immediately before the accident, she could determine the location of her husband's auto in relation to the center line of the highway. The location of decedent's automobile at impact would be almost conclusively determinative of the issue of the negligence of the defendants and the lack of decedent's contributory negligence.

The allegation that the decedent was in the exercise of due care and caution for his own safety at the time of the occurrence was a necessary and material allegation, and must be proved. The use of the secondary evidence of careful habits was allowable only if direct evidence of the fact was shown to be unavailable. In the case at bar the plaintiff was at the scene of the accident and observed the path of her husband's automobile before the collision, and observed the location of her husband's automobile at the impact. The best evidence of decedent's due care was the plaintiff's testimony or that of another who witnessed the accident. Plaintiff was not compelled to call one of the adverse parties to testify but she was compelled to call herself in the absence of other direct testimony. Under the circumstances of this case the secondary evidence of careful habits should not have been allowed.

We are aware of the consequences of the plaintiff testifying under section 2 of the Evidence Act (Ill. Rev. Stat. 1967, ch. 51, par. 2), but we find that because direct evidence was available, the truth seeking process is best served by requiring that type of evidence in preference to the secondary evidence of careful habits. When it was shown through the section 60 examination that plaintiff was at the scene and witnessed an important aspect of the accident, the careful habits testimony should have been stricken and plaintiff should have testified as to her husband's due care at the time of the accident.

A similar problem exists with the testimony of the reconstruction expert. In *Miller* v. *Pillsbury Co.*, 33 Ill.2d 514, 516, this court stated "we are of the opinion that expert testimony on reconstruction of an automobile accident should be admissible where it is necessary to rely on knowledge and application of principles of physics, engineering and other sciences beyond the ken of the average juror." However, reconstruction testimony may not be used as a substitute for eyewitness testimony where such is available.

Whether it may be used in addition to eyewitness testimony is determined by whether it is necessary to rely on knowledge and application of principles of science beyond the ken of the average juror. In this case this would be determined by the trial court after the testimony of the plaintiff as to the cause of the accident.

For the foregoing reasons the judgment of the appellate court affirming the circuit court of Kane County is reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*