(No. 62509.—

WINIFRED BRADFIELD, Adm'r, Appellee, v. ILLINOIS CENTRAL GULF RAILROAD COMPANY, Appellant.

*Opinion filed February 20, 1987.—Rehearing denied March 30, 1987.*

RYAN and SIMON, JJ., dissenting.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard E. Boyle and Charles L. Joley, of counsel), for appellant.

Jerome Mirza and Associates, Ltd., of Bloomington, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Illinois Central Gulf Railroad Company, appealed from the judgment of the circuit court of Madison County entered upon a jury verdict in the amount of $175,000 in favor of plaintiff, Winifred Bradfield, administrator of the estate of Richard Bradfield, deceased. The appellate court affirmed (137 Ill. App. 3d 19), and we allowed defendant's petition for leave to appeal (103 Ill. 2d R. 315(a)). The facts are adequately stated in the opinion of the appellate court and will be reviewed here only to the extent necessary to discuss the issues.

The testimony shows that on January 23, 1978, plaintiff's decedent was traveling east on a road perpendicular to defendant's railway, approximately one-quarter mile south of the town of Lostant, when his vehicle was struck at the crossing by defendant's train. Plaintiff's decedent was killed in the crash. The crossing was protected only by a railroad "crossbuck." The train involved in the collision consisted of a snow plow, two engines and a caboose. Although the weather at the time of the occurrence was clear and the sun was shining, the train had been used to clear snow that had drifted onto the tracks. A member of the crew testified that they had plowed a drift approximately two-thirds of a mile south of the crossing where the collision occurred. He testified that while plowing snow in this manner it was necessary to frequently sound the whistle in order to prevent its clogging with snow. Two crew members testified that

from the time the northbound train passed a whistle mark one-quarter of a mile south of the crossing, until the collision occurred at the crossing, they rang the bell and sounded the whistle.

The testimony of plaintiff, decedent's widow, and that of the two crew members was contradictory. The crew testified they followed the required crossing-whistle pattern of two long blasts, a short blast, and another long blast. Plaintiff testified that she heard the train coming down the tracks and a "frantic" blow of the whistle immediately before the crash. The circuit court, over defendant's objection, admitted the testimony of plaintiff and Jeffrey Bradfield, son of plaintiff and the decedent, that on other occasions, prior to the occurrence in question, crews operating defendant's trains had failed to blow a whistle or horn when approaching the crossing. These witnesses testified that the crews did not sound a whistle until after they had passed the crossing and were entering the town of Lostant.

This appeal presents the sole question whether the circuit court erred in admitting the testimony concerning defendant's "habit" of not blowing the whistle until the train had passed over the crossing and was entering the town of Lostant. The appellate court, citing *Gardner v. Geraghty* (1981), 98 Ill. App. 3d 10, 15, acknowledged that the current rule regarding "habit" testimony was that it was permitted in wrongful death cases where there were no eyewitnesses to the occurrence. (See also *Plank v. Holman* (1970), 46 Ill. 2d 465.) The appellate court, however, noting that the emerging view as reflected by the Federal Rules of Evidence (Fed. R. Evid. 406), was that habit evidence was always admissible to prove the conduct of a person or business organization, rejected the eyewitness requirement and followed Rule 406. Rule 406 of the Federal Rules of Evidence provides:

"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Fed. R. Evid. 406.

Defendant contends that the appellate court erred in not following this court's decision in *Plank v. Holman* (1970), 46 Ill. 2d 465. *Plank*, it argues, reaffirmed this jurisdiction's long-standing rule that habit testimony is not admissible when eyewitness testimony is available. They argue that, even if this court were to adopt Federal Rule of Evidence 406, the testimony was insufficient to prove defendant's habit of failing to properly sound the whistle. Citing *Reyes v. Missouri Pacific R.R. Co.* (5th Cir. 1979), 589 F. 2d 791, and *Wilson v. Volkswagen of America, Inc.* (4th Cir. 1977), 561 F. 2d 494, defendant argues that evidence of habit is not admissible unless a foundation is laid showing an adequate sampling and uniformity of response. It contends that because the sole issue before the jury concerning defendant's negligence was whether the whistle was properly sounded at the time of the collision, plaintiff's "vague" testimony that she heard a "frantic whistle and a crash" was insufficient to prove that the whistle was not sounded for one-quarter mile before the crossing. Under these circumstances, defendant argues that the appellate court erred in holding that if such testimony was error, the error was harmless.

Upon examination of the record we conclude that defendant did not preserve for review, and we should not decide on the grounds presently urged by defendant, the question whether the evidence was erroneously admitted. The transcript shows that in plaintiff's direct examination, the following ensued:

"Q. In the past when railroad trains have gone over

that crossing, have they blown their whistle for that crossing?"

MR. BROWN: Show my objection. I don't think that has any relevance in this case.

THE COURT: Overruled."

During the direct examination of Jeffrey Bradfield, the following ensued:

"Q. *** Do you remember when it was that you moved in this house in Lostant? How long had you lived there before the collision occurred?

A. A couple of years. I'm not really sure. A couple of years.

Q. Well, I want to ask you a question about that over the period of time that you were there. When the trains were going on that track did they whistle for that railroad crossing?

A. No.

MR. BROWN: Your Honor, I show my objection for the reason that it has no relevancy to this case.

THE COURT: Objection overruled."

The only reference to the evidence contained in defendant's post-trial motion is the following:

"1. The Court erred when it;
    ***

(B) Permitted the plaintiff to introduce over Defendant's objection the testimony of Winifred Bradfield and Jeffrey Bradfield that on other occasions prior to the occurrence in question, that other train crews of the Illinois Central Gulf had failed to sound a whistle or horn when approaching the crossing in question."

The rule is well established that specific objections to evidence must be made in all instances where the objection, if specifically pointed out, might be obviated or remedied. "Such objection must be specific so as to afford the adverse party an opportunity to make correction." *Johnson v. Bennett* (1946), 395 Ill. 389, 398.

The objection was only to the relevance of the evidence. It has long been established that habit testimony

is relevant and the only limitations imposed on its admission have been on the basis of necessity. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240; *Plank v. Holman* (1970), 46 Ill. 2d 465; *McElroy v. Force* (1967), 38 Ill. 2d 528.) Evidence of habit and custom of an employee of an express company was held properly admitted in *American Express Co. v. Haggard* (1865), 37 Ill. 465, and such testimony has been admitted since that time without proof of necessity, thus making it questionable whether the cases cited (*Hardware State Bank, Plank* and *McElroy*) are in point. Defendant does not now contend that the evidence was not relevant and the objections shown in the transcript and in the post-trial motion raise only the issue of relevance. Defendant made no objection based on either the alleged availability of eyewitnesses or the lack of proper foundation, and objection on those grounds was therefore waived. *People v. Williams* (1983), 97 Ill. 2d 252; *Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487, 495.

For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*

JUSTICE RYAN, dissenting:

I must dissent from the majority opinion because I find that the defendant's objection to the relevancy of the habit and custom testimony offered was proper and sufficient to preserve for review the question as to the propriety of the admission of such testimony. Therefore, this court should have decided the merits of that question. On the merits I would find that the evidence of habit or custom was erroneously admitted and, for that reason, the verdict should be reversed.

The opinion holds that habit testimony has been held by this court to be relevant. Therefore, according to the opinion, the defendant's objection to the evidence on the grounds of relevancy was not well taken. Since no other

objection to this evidence was stated, the opinion holds that the question of the admissibility of this evidence for any other reason was waived.

Relevancy has been defined as the tendency of the evidence to establish a material proposition. (McCormick, Evidence sec. 185, at 435 (2d ed. 1972).) However, although, logically, certain evidence, in a sense, may tend to establish a certain fact, it may lack legal relevancy because of its slight probative value or the dangers that would accompany the reception of such evidence. (McCormick, Evidence sec. 185, at 438-41 (2d ed. 1972).) Legal relevancy denotes more than a minimum probative value. Generally, a higher degree of probative value is required of evidence submitted to juries than would be acceptable in ordinary reasoning. 1A Wigmore, Evidence sec. 28, at 969 (Tillers rev. ed. 1983).

We need not become involved in the dichotomy of whether a distinction should or should not be maintained on the basis of the concept of "legal relevancy." (See McCormick, Evidence sec. 185, at 440-41 (2d ed. 1972).) To be relevant, and thus admissible, habit or custom must be established to the degree that the desired inference may be drawn therefrom. In our case, evidence to establish habit did not conform to the accepted standards necessary to meet this relevancy test. That is, the habit or custom of not blowing the train's whistle at the crossing in question was not established to the degree required to permit an inference to be drawn that the whistle was not blown at that crossing on the occasion of the accident involved in this case. Therefore, the defendant's objection to this evidence on the basis of relevancy was valid and the question was preserved for review. We should, therefore, have considered the merits of the objection.

On the merits, I would hold that the tendered evidence as to the habit of not sounding the train whistle at

this crossing should not have been admitted. Such evidence was not relevant. By that I mean that the assertion by the witnesses as to the failure of trains to sound the whistles on previous occasions was not sufficient to establish a habit or pattern of behavior from which the jury could draw the necessary inference as to the defendant's conduct on the occasion of the accident.

The Model Code of Evidence defines habit as follows: "Habit means a course of behavior of a person regularly repeated in like circumstances." (Model Code of Evidence Rule 307 (1942).) The Federal rules of evidence do not specifically define habit, but provide in Rule 406 that the habit of a person is relevant to prove that the conduct of the person on a particular occasion was in conformity with the habit. (Fed. R. Evid. 406.) The notes of the advisory committee on the proposed rules of evidence, commenting on Rule 406, however, refer to Professor McCormick's distinction between habit and character wherein habit is defined as the person's regular practice of meeting a particular kind of situation with a specific type of conduct. Fed. R. Evid. 406, Notes of Advisory Committee on Proposed Rules, 28 U.S.C.A., at 327 (1984); see also McCormick, Evidence sec. 195, at 462 (2d ed. 1972).

In *Wilson v. Volkswagen of America, Inc.* (4th Cir. 1977), 561 F.2d 494, 511, the court stated that the requirement of proof of habit or pattern of conduct as established by the Federal rules of evidence and legal authorities in general are "somewhat strict." Also, the court said:

> "It has been repeatedly stated that habit or pattern of conduct is never to be lightly established, and evidence of examples, for purpose of establishing such habit, is to be carefully scrutinized before admission. \*\*\* It is only when the examples offered to establish such pattern of conduct or habit are 'numerous enough to base an infer-

ence of systematic conduct' and to establish 'one's regular response to a repeated specific situation' or *** where they are 'sufficiently regular or the circumstances sufficiently similar to outweigh the danger *** of prejudice and confusion,' that they are admissible to establish pattern or habit." (*Wilson v. Volkswagen of America, Inc.* (4th Cir. 1977), 561 F.2d 494, 511.)

See also *Reyes v. Missouri Pacific R.R. Co.* (5th Cir. 1979), 589 F.2d 791, 794-95; Lewan, *The Rationale of Habit Evidence*, 16 Syracuse L. Rev. 39 (1965).

Not only was the evidence insufficient in our case to establish habit or custom so that the desired inference may be drawn, but also there is no evidence in this case to indicate that the person who was the engineer on the occasion of the accident had ever crossed that crossing before, or had ever failed to sound the whistle at that crossing or any other crossing. This was not a regular train on that line. It consisted of two engines, a caboose and a snowplow. It was not engaged in the usual operation of the railroad. It was plowing snow from the tracks. Even if the evidence in this case establishes that other engineers regularly neglected to sound the whistle at this crossing or other crossings, that pattern of conduct does not permit the inference that the engineer in this case, who was engaged in a special function, failed to sound the whistle. There was no evidence that any train engaged in a special operation such as plowing snow ever failed to sound its whistle at this crossing.

It is true that evidence of custom of an organization to act or fail to act in a particular manner is admissible as tending to show that a member of that organization acted similarly in a similar situation. However, it is an accepted principle that "generalized descriptions of organizational tendencies have little probative value or, at least, that such generalized descriptions have substantially less probative value than more detailed descrip-

tions showing particular types of repetitive tendencies toward care or carelessness that resemble the type of alleged carelessness forming the basis of the lawsuit at hand." 1A Wigmore, Evidence sec. 97, at 1657 (Tillers rev. ed. 1983).

Federal Rule of Evidence 406, which provides that evidence of habit of a person is admissible, also provides that the *"routine* practice of an organization" (emphasis added) is likewise admissible. (Fed. R. Evid. 406.) Thus, just as habit evidence of an individual, to be admissible, must disclose the regular practice of an individual in meeting a particular situation with a specific response, so also must evidence of the conduct of an organization establish such conduct to be the *routine* practice of the organization. The notes of the advisory committee on the proposed Federal rules state that equivalent behavior on the part of a group to habit of a person is designated "routine practice of an organization" in the rule. (Fed. R. Evid. 406, Notes of Advisory Committee on Proposed Rules, 28 U.S.C.A., at 327 (1984).) Professor McCormick states that custom of a business organization is admissible "if reasonably regular and uniform." (McCormick, Evidence sec. 195, at 464 (2d ed. 1972).) The important point is, whether we consider habit evidence of an individual or custom evidence of an organization, the evidence must be sufficiently detailed and specific, and the situations involved must be similar enough to give rise to a reliable inference and not to speculation or conjecture. Permitting the jury to consider such evidence involves many dangers. It is only when such evidence has sufficient probative value and is sufficiently reliable to outweigh these dangers that such evidence is admissible. As one author noted, "[I]f you are going to let a wild horse onto your property you had better know how to handle it properly." Lewan, *The Rationale of Habit Evidence,* 16 Syracuse L. Rev. 39, 53 (1965).

Again, I emphasize that the train in this case was not a regular train on that track, and it was not engaged in operations similar to those of the other trains which the witnesses testified had failed to sound their whistles on previous occasions. It is dangerous and extremely unfair to permit a jury to speculate that since certain other trains had failed to sound their warning whistles an unspecified number of times on unspecified occasions, this train, which was engaged in a different type of operation from the others, failed to sound its whistle on the occasion of the accident. What kind of trains were these others that failed to sound their whistles? Were they what are commonly called "locals" that pick up or deposit cars at the local grain elevators, or were they the long, through freight trains? As noted above, there was no evidence that any train engaged in a special type operation, such as plowing snow, ever failed to sound a warning whistle at this crossing.

In this dissent I have addressed only the relevancy question. I have not considered the admissibility of the objected-to evidence on other grounds, such as the availability of eyewitnesses who could testify as to the sounding of the whistle.

JUSTICE SIMON, also dissenting:

I agree with Justice Ryan's conclusions and much, but not all, of the analysis in his dissenting opinion. The majority's disposition is an overly technical one, and its only merit is to allow the court to avoid the question of whether the evidence should have been admitted as showing a habit or routine business practice. The evidence, in my view, was far too ambiguous, and it should have been excluded.