PETER CAIRNS, SR., Adm'r of the Estate of Peter Cairns, Jr., Deceased, Plaintiff-Appellant, v. STEVEN R. HANSEN, Defendant-Appellee.

Second District   No. 2—87—0585

Opinion filed April 29, 1988.—Rehearing denied July 11, 1988.

Reynold E. Becker, of Scanlan & Hartigan, Ltd., of Chicago (Edmund J. Scanlan, of counsel), for appellant.

Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, P.C., of Elgin (William R. Ketcham, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Peter Cairns, Sr., as administrator of the estate of Peter Cairns, Jr., deceased, appeals from the judgment of the circuit court of Kane County entered on the jury verdict in favor of defendant, Steven R. Hansen, and against plaintiff. This case involves a wrongful death action arising out of a collision between an automobile driven by defendant and a motorcycle driven by plaintiff's decedent.

Plaintiff raises the following issues on appeal: (1) whether the trial court erred when it refused to allow the introduction of evidence of the decedent's careful habits; (2) whether the trial court erred when it refused to allow the introduction of evidence to rebut the presumption of the decedent's intoxication which arose from the .124 alcohol content of his blood, deemed admitted following plaintiff's failure to answer defendant's request to admit; (3) whether the trial court erred when it allowed defendant's instruction No. 17 regarding intoxication where such instruction was neither read nor given to the jury; (4) whether the trial court erred when it limited plaintiff's cross-examination of defendant's expert toxicologist; and (5) whether the trial court erred when it refused to allow diagrams, which had previously been admitted into evidence, to be taken into the jury room during their deliberations.

On July 5, 1982, at approximately 1 a.m., plaintiff's decedent was travelling on his motorcycle with a passenger southbound on Route 25 towards its intersection with Iroquois Street in the City of St. Charles. Immediately prior to the accident, the decedent and his passenger travelled back and forth on Route 25 in front of Michael and Linda Haller's residence, which is located three houses north of Iroquois Street on Route 25. There is conflicting evidence that he was travelling at the speed limit or up to 40 miles per hour the last time he passed the Haller residence, although there was impeachment evidence that he was travelling at 45 or 50 miles per hour. The posted speed limit was 35 miles per hour.

At that same time, defendant was travelling northbound on Route 25 and was attempting to make a left-hand turn onto westbound Iroquois, when the collision between his automobile and the decedent's motorcycle occurred. Defendant testified that he never saw the motorcycle before the collision. He was travelling at about 10 miles per hour. The impact caused both the decedent and his passenger to be thrown from the motorcycle and killed. The force of the impact was so great that the decedent's body peeled back the top of defendant's automobile and was found in the backseat, and both the decedent's motorcycle and defendant's automobile were demolished.

Officer Charles Parker of the St. Charles police department, and prime investigating officer of this incident, conducted the investigation. Officer Parker made numerous measurements with regard to the location of the vehicles, the debris from the accident, and a gouge in the roadway. He, subsequently, prepared a diagram, which was not drawn to scale, but accurately depicted the scene, with the measurements that he had made. A large percentage of the debris from the

accident was found in the southbound lane of traffic on Route 25. Further investigation revealed that the motorcycle's headlight was on at the time of the accident.

According to Officer Parker, at the time of the accident there was a dip in the roadway, just north of the accident site on Route 25, causing a southbound vehicle's lights to disappear from view for a fraction of a second when that vehicle travelled at a speed in excess of 50 miles per hour. There is conflicting testimony regarding how fast the decedent was travelling just prior to the collision. Linda Haller, a friend of the decedent's and an eyewitness to the events leading up to the accident, testified for plaintiff and stated that the decedent "was not going over 40." Under cross-examination, however, Mrs. Haller conceded that, during a deposition taken in 1985, she did state that she could not estimate the decedent's speed. Michael Haller, Linda's husband and the decedent's friend, also witnessed the events leading up to the incident. Mr. Haller testified that, at the time of trial, he could not estimate the decedent's speed. However, Mr. Haller had previously told Officer Parker that the decedent was going 45 to 50 miles per hour.

At approximately 4 a.m., on July 5, 1982, the Kane County coroner withdrew a sample of blood from the decedent's heart and tested it for alcohol. The blood was found to contain an alcohol concentration of .124.

Prior to trial, defendant's attorneys filed and served upon plaintiff's previous attorney a request to admit facts and genuineness of documents which stated:

"1. A blood alcohol test was performed upon Peter Cairns, Jr., on or about 4:00 a.m. on July 5, 1982, by Kane County Coroner, Mary Lou Kearns.

2. The tests upon the blood drawn from Peter Cairns, Jr. for the purpose of determining the extent of any alcohol in his system were performed by the Illinois Department of Public Health ***.

3. The results of said blood alcohol tests indicated that there was 0.124% ethanol in the bloodstream of Peter Cairns, Jr.

4. A report of said findings was made by the Chief, Toxicology Laboratory, Illinois Department of Public Health, namely John J. Spikes, Ph.D. ***.''

No timely response was made to this request, and the trial court ordered that these facts be deemed admitted.

At trial, plaintiff sought to introduce testimony concerning the decedent's careful habits, both on previous occasions and on the date in

question, through the testimony of Linda Haller. The trial court refused to allow the testimony of decedent's careful habits, despite plaintiff's offer of proof. Similarly, plaintiff unsuccessfully attempted to introduce evidence that would allegedly rebut the presumption of decedent's intoxication by way of testimony from Linda Haller, Sheri Horn Stewart, and Wade Corrigan, who also witnessed the events leading up to the accident and who witnessed the impact in his peripheral vision.

Dr. John Spikes, who was chief toxicologist for the Illinois Department of Public Health at the time of the accident, was called as defendant's expert witness. During direct examination, Dr. Spikes testified regarding his opinions of the effect that a .124 blood-alcohol reading would have had on decedent. Plaintiff sought to cross-examine Dr. Spikes concerning certain scientific journals, as well as the significance of the .124 blood-alcohol level. The trial judge refused to allow the cross-examination and an offer of proof was made.

Plaintiff also objected to the trial court's giving defendant's instruction No. 17. While the trial court stated that it would give defendant's instruction regarding intoxication, it was never read or given to the jury. Further, the trial court refused to allow the enlargements of Officer Parker's diagrams and charts, plaintiff's exhibits Nos. 18, 19, and 20, to be taken into the jury room during deliberations. Sixty-three photographs of the scene of the accident, which were taken by and maintained in the custody of the St. Charles police department, were unavailable at the time of trial.

We address first plaintiff's contention that the trial court erred in refusing to allow him to introduce evidence rebutting the presumption of decedent's intoxication admitted by his failure to answer a request to admit facts filed by defendant. Plaintiff does not dispute that he was deemed to have admitted the fact that there was .124 ethanol in the bloodstream of decedent at 4 a.m., on July 5, 1982, by his failure to deny or object to the requested admissions. (See 107 Ill. 2d R. 216.) Rather, he argues that, pursuant to section 11−501.2(b)(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11−501.2(b)(3)), a blood-alcohol concentration of .10 or more is only a presumption that a person was under the influence of alcohol, which he is entitled to rebut. He further points out that subsection 4 of the same section provides that "[t]he foregoing provisions of this Section shall not be construed as limiting the introduction of any other relevant evidence bearing upon the question whether the person was under the influence of alcohol." (Ill. Rev. Stat. 1985, ch. 95½, par. 11−501.2(b)(4).) At trial, plaintiff sought to introduce evidence from three witnesses

who would state that they saw decedent shortly before the occurrence and that he was not intoxicated.

Defendant contended below, and now on appeal, that once plaintiff was deemed to have admitted that there was an .124 alcohol concentration in decedent's bloodstream, this was a judicial admission and he could not introduce evidence to rebut the presumption of intoxication. The trial court repeatedly denied admission of this evidence on the basis that it had been admitted and was, therefore, contrary to the presumption of intoxication. Defendant also argues that plaintiff failed to preserve the issue of the admissibility of the excluded testimony by failing to offer a proper foundation for the witnesses' testimony on intoxication. Defendant further asserts that no prejudicial error occurred because no instruction was ever given on the definition of intoxication or the presumption set forth in the statute.

■ We agree with plaintiff that the trial court erred in refusing to admit the proffered evidence that decedent was not intoxicated. The only fact admitted through plaintiff's failure to respond to defendant's request to admit facts was that a blood-alcohol test performed on decedent at 4 a.m., on July 5, 1982, by the Illinois Department of Public Health indicated that there was .124 ethanol in the bloodstream of decedent. This was not a binding admission of intoxication, and it gave rise only to a rebuttable statutory presumption of intoxication. It was an admission of the test result which allowed this evidence without the necessity of defendant having to introduce proof of that fact. The purpose of the rule on admission of a fact is to obviate the expense and any difficulty of procuring evidence of a fact which is generally of incontrovertible character. See *Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 108, 197 N.E. 578.

■ Sections 11—501.2(b)(3) and (b)(4) of the Illinois Vehicle Code clearly provide that a blood-alcohol concentration of .10 or more is a presumption of intoxication and the presumption does not limit the introduction of any other relevant evidence on whether the person was under the influence of alcohol:

"3. If there was at that time an alcohol concentration of 0.10 or more, it shall be presumed that the person was under the influence of alcohol.

4. The foregoing provisions of this Section shall not be construed as limiting the introduction of any other relevant evidence bearing upon the question whether the person was under the influence of alcohol." (Ill. Rev. Stat. 1985, ch. 95½, pars.

11—501.2(b)(3), (b)(4).)

It is well settled that the presumption of intoxication, statutorily created by a blood-alcohol concentration of .10 or more, is not conclusionary, but may be overcome by evidence rebutting the presumption. (*City of East Peoria v. Harding* (1976), 40 Ill. App. 3d 535, 536-37, 352 N.E.2d 8.) Accordingly, the trial court's refusal to allow any rebuttal testimony on this issue was clearly erroneous.

■ We also reject defendant's argument that there was not a sufficient offer of proof of the proposed evidence that the decedent was not intoxicated. Defendant generally contends that no foundation was laid for certain witnesses' opinions on intoxication with respect to their opportunity to observe or ability to give such an opinion based on experience. Any objection to the lack of foundation for this offered testimony on intoxication is waived by failing to make this specific objection below. (See *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 729, 457 N.E.2d 85.) Moreover, an adequate offer of proof was made for this testimony, particularly under the circumstances here, where the trial court clearly indicated that it would not allow the evidence on the basis of its ruling that the admission of fact precluded introduction of any rebuttal evidence.

■ Defendant further contends that plaintiff cannot show prejudicial error because the record discloses that no instruction of the definition of intoxication or the statute creating the presumption was ever given and that plaintiff's failure to offer any instructions on this issue waives any error. This argument is meritless. The error was created by defendant's objection to rebuttal evidence that the decedent was not intoxicated. An instruction defining intoxication and an instruction on the statutory presumption would not have cured the erroneous denial of rebuttal evidence of lack of intoxication.

■ For other reasons, however, we determine that the error here was not prejudicial under the circumstances. Where it appears that an error did not affect the outcome below, or where the reviewing court can see from the entire record that no injury has been done, the judgment will not be disturbed. (*J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 115, 483 N.E.2d 273.) A party is not entitled to reversal based on rulings on evidence unless the error was substantially prejudicial and affected the outcome of the trial. (*Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 1060, 502 N.E.2d 315.) The burden is on the party seeking reversal to establish prejudice. *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1020, 498 N.E.2d 867.

■ The jury was instructed that whether or not a person in-

volved in the occurrence was intoxicated at the time is a proper question for the jury to consider in determining whether or not he was contributorily negligent. (See Illinois Pattern Jury Instructions, Civil, No. 12.01 (2d ed. 1971).) The jury was further instructed that defendant claimed that the decedent was contributorily negligent by, *inter alia*, negligently driving his motorcycle while intoxicated and that plaintiff had the burden to prove defendant's negligence, damages, and proximate cause. Finally, the jury was instructed that if the jury found for plaintiff, then it would consider defendant's claim that the decedent was contributorily negligent. (See Illinois Pattern Jury Instructions, Civil, No. A45.05 (2d ed. Supp. 1986).) The jury did not reach the issue of the decedent's contributory negligence as it returned a general verdict against plaintiff on the issues plaintiff had the burden to prove. Thus, because the error related to the issue of contributory negligence involving the reduction of damages, an issue never reached by the jury, it was harmless. See *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 729-32, 457 N.E.2d 85.

Examination of the record discloses that the parties both argued, consistent with the instructions, that intoxication of the decedent was to be considered as to the contributory negligence of the decedent. On the liability question, the focus of the proofs and arguments concerned whether defendant made an improper turn into decedent's path or whether decedent was travelling so fast that defendant was not negligent in turning as he did. On these facts, we find the error did not operate to prejudice plaintiff nor did it affect the outcome of the trial.

Similarly, we agree with plaintiff's further claim of error that his cross-examination of defendant's expert toxicologist, Dr. John Spikes, regarding whether the human body produces alcohol after death, was improperly prohibited. The trial court, consistent with its prior rulings, restricted cross-examination on this subject because it believed further inquiry into this matter was precluded by the admission to the .124 blood-alcohol concentration. Nevertheless, as discussed above, this error did not affect the jury's verdict on liability and, therefore, was harmless error.

Plaintiff also contends that the trial court erred in refusing to allow him to introduce evidence of decedent's careful habits. During trial, plaintiff sought to adduce testimony of decedent's careful habits in operating his motorcycle. In an offer of proof, Linda Haller testified that she had ridden on the motorcycle with the decedent a couple of hours before the occurrence and that he drove carefully, obeyed the laws, and drove slowly. She further stated that she had ridden with

decedent every day for a period of time before the accident and he was always careful and would never drink and drive. The trial court excluded this proposed evidence stating it was remote and conclusionary.

Plaintiff relies on the appellate court decision in *Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 484 N.E.2d 365, *aff'd on other grounds* (1987), 115 Ill. 2d 471, 505 N.E.2d 331, which adopted Rule 406 of the Federal Rules of Evidence (Fed. R. Evid. 406). This rule provides:

> "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." (Fed. R. Evid. 406.)

This rule expressly rejects the eyewitness requirement in Illinois that "habit" testimony is only permitted in wrongful death cases where there are no eyewitness to the accident. See *Bradfield*, 137 Ill. App. 3d at 21-23, 484 N.E.2d at 367-68.

The appellate court decision was appealed to our supreme court (*Bradfield v. Illinois Central Gulf R.R. Co.* (1987), 115 Ill. 2d 471, 505 N.E.2d 331), and the supreme court affirmed on other grounds. The court stated, however, that it has long been established that habit testimony is relevant and the only limitations imposed on its admissibility have been on the basis of necessity, citing *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257, *Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12, and *McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708. (*Bradfield*, 115 Ill. 2d at 475-76, 505 N.E.2d at 333-34.) The court also noted that these cited cases may not be in point as related to the facts of the case before it.

In any event, the established rule of law in Illinois, set forth in *Hardware State Bank*, *Plank*, and *McElroy*, is that in wrongful death cases where there are no competent eyewitnesses, and the plaintiff has the burden of proving the person injured exercised the proper degree of care for his own safety at the time of the occurrence, evidence of prior careful habits, if pertinent, may be admitted as tending to prove the deceased's exercise of due care. Whether the reason for this rule still exists, now that the negligence of a plaintiff and a defendant is compared after liability is found against a defendant, and where the burden of proof is on a defendant to show plaintiff's contributory negligence, is for our supreme court to determine.

Under the facts in the case at hand, there were eyewitnesses

who either testified or were not called by plaintiff to testify. Several witnesses testified to the decedent's conduct just prior to the collision; one witness testified that he saw the impact in his peripheral vision; and two additional eyewitnesses, the two passengers in defendant's automobile, were not called by plaintiff as witnesses. Thus, under the long-standing rule enunciated in the above-cited cases, because there was a competent eyewitness, the habit testimony to prove defendant's due care was inadmissible.

Nevertheless, even were we to consider evidence of habit and custom to be properly admitted in Illinois without proof of necessity (see *Bradfield*, 115 Ill. 2d at 476, 505 N.E.2d at 334) or apply Federal Rule of Evidence 406, the offered evidence was far too ambiguous and general to establish a habit of the decedent in meeting a particular situation with a specific response. (See Fed. R. Evid. 406, Notes of Advisory Committee on Proposed Rules, 28 U.S.C.A. §406, at 327 (West 1984).) The offer of proof consisted of Linda Haller's testimony that she had ridden with decedent every day for a period of time before the accident and that he was careful and did not drink. She also said that she was with him the night of the accident and he drove carefully and slowly. This was insufficient to establish a habit. For all the reasons stated, no error resulted from the exclusion of plaintiff's habit evidence.

Plaintiff next contends that defendant's instruction No. 17, which contained the presumption that a person is under the influence of alcohol when there is a blood-alcohol concentration of .10 or more, was improperly given over his objection. He argues that the instruction should have contained the portion of the statute which allows other evidence to rebut this presumption. He concedes, however, that the instruction was not read to the jury with the other instructions at the end of arguments and the instruction is not contained in the record on appeal. The record does reveal that at the end of the plaintiff's case, the trial court advised the jury that it took judicial notice of a statute, and read to the jury the portion of section 11—501.2 of the Illinois Vehicle Code relating to the presumption of intoxication of a blood-alcohol concentration of .10 or more, relating it to plaintiffs admission of decedent's .124 test result. No objection was made to this procedure.

Plaintiff's failure to object to the reading of the statute at the end of his case, to include the instruction which was not read to the jury in the record, and to tender an instruction on the subject constitutes a waiver of this issue. Nevertheless, we apply the rationale, as we did earlier in this opinion, that error respecting decedent's intoxication

under the circumstances of this case is not prejudicial where the jury found no liability and, hence, did not reach the decedent's contributory negligence.

■ ■ Plaintiff's last contention is that the trial court erred in refusing to allow diagrams of the accident scene, prepared by Officer Parker, which were admitted into evidence, to be taken to the jury room during the jury's deliberation. Plaintiff maintains that, although the diagrams were not drawn to scale, they contained many accurate measurements which would be particularly helpful to the jury because photographs depicting the scene were not available at trial. Defendant responds that because of the extensive testimony regarding the diagrams and their exhibition to the jury during the trial, the trial court's decision was neither an abuse of discretion nor prejudicial to plaintiff.

The trial court has considerable discretion in determining whether an exhibit may be taken to the jury room, and its decision will not be disturbed absent the showing of an abuse of discretion to the prejudice of a party. (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 190, 498 N.E.2d 522; *Fultz v. Peart* (1986), 144 Ill. App. 3d 364, 379, 494 N.E.2d 212; see *People v. Williams* (1983), 97 Ill. 2d 252, 291, 454 N.E.2d 220, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; Ill. Rev. Stat. 1985, ch. 110, par. 2—1107(d).) Where an exhibit was used extensively during trial and explained through direct testimony and cross-examination, it has been held that not allowing it to go to the jury during deliberations is not an abuse of discretion. See, *e.g.*, *Sears v. Kois Brothers Equipment, Inc.* (1982), 110 Ill. App. 3d 884, 892, 443 N.E.2d 214; *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 9, 364 N.E.2d 423.

No transcript is available in the appellate record which would indicate the trial court's reasons for its ruling on this matter. Given the extensive testimony regarding the exhibits and the fact that they were displayed to the jury during the testimony and final arguments, we believe the jury was adequately aware of their content and no abuse of the trial court's broad discretion has been shown.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.